ConoocK, J.
The grounds taken in behalf of the prisoner may be included in the following in the arrest of judgment:
1st. Because the indictment is defective inasmuch as it does not state the manner of the death, &c.
2nd. Because he has been found guilty of the offence of manslaughter, to which he is not subject by the laws of the State;
*541 And for a new trial, because be was not permitted to exculpate himself by his own oath, as he had a right to do by the act of 1740.
By this act negroes were declared forever within this state to be chattels personal in the hands of their owner» and possessors and their executors, administrators and assigns, to all intents, constructions and purposes whatsoever. But when this absolute dominion was given to the owners and possessors, it became necessary to place some restrictions upon the exercise of it. It was, therefore, enacted, that if any person or persons, whatsoever, shall wilfully murder his own slave or the slave of any other person, every such .person shall, upon conviction thereof, forfeit and pay the sum of seven hundred pounds current money, and shall be rendered . nd i hereby declared altogether and for ever incapable of holding, exercising, enjoying or receiving the profits of any office, place or employment, civil or military, within this province, and in case he is not able to pay, shall be imprisoned, &c. And further, that ii any person shall, on asuddenheat and passion or by undue correction, kill ins own slave, or the slave of any' other person, he shall foifeil the sum of three hundred and fifty pounds current money. And by the 39th section, it is declared, that if any slave shall suffer in life, limb or member or shall be maimed, beaten or abused, contrary to the direc-lions and true intent and meaning of this act. when no white person shall be present, or being present shall neglect or refuse to give evidence or be examined upon oath concerning the same, in every such case, the owner or other person who shall have the care and government of such slave shall be deemed, taken, reputed and adjuged to be guilty of such offence, and shall be proceeded against accordingly, without further proof; unless such owner or other person as aforesaid can make the contrary appear by good and sufficient i vidence, or shall by his own oath clear and exculpate himself; which oatii .every court where such offence shall be tried is hereby empower-e^l to administer and to acquitthe offender accordingly, if clear *542 proof of the offence be not made by two witnesses at least, any Jaw usage or custom to the contrary notwithstanding.
By which enactments it is obvious, that it became necessary, and was the intention of the legislature, to make ara-dical alteration in the common law doctrine of homicide, so ■far as relate to owners or employers and their slaves. This act remained in full force, and was repeatedly acted on until the year 1821, when the legislature declared by their act, entitled, An act to increase the punishment inflicted on persons convicted of murdering any slave, and for other purposes therein mentioned, That if any person, from and after the passing of thisact, shall wilfully, maliciously and deliberately murder any slave within this State, such person, on conviction shall suffer death without the benefit of clergy, and that if any person shall kill any slave in sudden heat and passion such person on conviction, shall be fined in a sum not exceeding five hundred dollars, and be imprisoned not exceeding six months. The professed object in this last act was to increase the punishment as to murder and to omit the killing by undue correction. Under the old act it is clear that the common law kind ofhomicide, technically called manslaughter, was intended to be abolished; for the citizen is only made amenable for three kinds ofkilling viz: murder, killing in sudden heat and passion, or by undue correction. Now although killing on a sudden heat and passion is manslaughter, yet manslaughter also embraces a killing by any unlawful blovv or blows. But as it was lawful to give blows the owner shall not be adjudged guilty, except he give them in such number and to such extent as to amount to undue correction: and in such case it is clear that they meant not to apply the common law doctrine of manslaughter, because the punishment, of that offence is branding in the hand and imprisonment and they have imposed a fine only; and the practice has been in accordance with this view of the subject; for no man has ever been adjudged guilty of manslaughter for killing a negro. The purpose of the last act, it is presumed, in this par- • *543 ticular, was the same as that of the legislature of 1740. If th*ey had uot intended that the offence of killing on sudden heat and passion should have been considered iu a different light from that in which the common law views it, when occurring between men standing on equal footing in society, it would have been as easy for them to have used the technical word manslaughter, in the second section, as to have used the technical word murder in the first. No judgment then can be pronounced on this verdict.
That the indictment is also defective, I think is equally clear. There is an obvious difference between creating a new offence and altering the punishment of one known to the law. Now, supposing it to be sufficient to charge the new of-fence in the indictment in the words of the act, there can be. no ground on which to say that the old offence must not be described as having been committed with all the particularity of the common law. The word murder is a technical word, the offence is well known to the common law. When the legislature use it, therefore, it is to receive its technical construction; as to that then the offence should have been charged in the indictment as at common law and all the essential parts of the common law indictment be pursued.
But, even as to the offence stated in the second count, the indictment is defective. Suppose it to be a new offence. It is as necessary in the case of a new offence as in the case of an old one, that a man should know what lie is charged with and how he is to defend himself. It is evident that the law has been mistaken by the solicitor, in hissupposingthat itwas enough to say an offence has been committed, in the words of the act. Wbat'is the object of the indictment? What are the reasons, on the ground of which-the-law exacts a certain particular description of the offence? From these it is evident that we can ascertain the true test by which the sufficiency of any criminal charge is to be ascertained.
It is necessary then to specify on the face of the indict-offlentthe criminal nature anddegree of the offence, which are *544 conclusions of law from the facts, and also the particular facts and circumstances which render the defendant guilty of that offence.
1st. In order to identify the charge; least the grand jury should find a bill for one offence, and the defendant be put upon his trial in chitf for another, without authority.
'2nd. That the defendants conviction or acquital may enure to his subsequent protection, should he be again questioned on the same grounds.
3rd. To warrant the court in granting or refusing any particular right or indulgence which the defendant claims as incident to the nature of the case.
4th. To enable the defendant to prepare for his defence in particular cases, and to plead in all, or, if he prefer it. to submit to the court by demurrer whether the facts alleged, supposing them to be true, so support the conclusion in law ag to render .it necessary for him to make any answer to the charge; and,
5lh. Finally and chiefly to enable the court, looking at the record alter conviction, to decide whether the facts charged are sufficient to support a conviction of a particular crime and to warrant their judgment; and also in some instances to guide them in the infliction of a proportionate measure of punishment upon the offender.
Now this certainty consists of two parts. The matter' tobe charged and the manner of charging it. Hence has originated the error as to the law. The matter is the crime, and this io a new.offence by statute must be in the language of the statute and with all that is necessary to constitute the, crime. (Hawkins 73-77. Chitty 1.)
But the manner is as necessary in the one case as in the other, and Star/cic, in page 23b, of his excellent treatise on criminal proceedings, says: it may therefore be assumed that there is no difference between common law and statutable offences as far as negroes. The general rules ac— curding to which the expanded description of the offence'. *545 should be expressed on the record, except Indeed in those instances (and the exception confirms the observation) where the legislature has peremtorily directed that some general form of words shall be used. And this confirmed by Chitty, 1 vol. page 275, and by Hawkins, 2 vol. ch. 25. sect. 99 and 111. Although they all admit that it has heea held otherwise by lord Holt, whose authority however on the subject cannot be put in the scale against the satisfactory reasoning on the subject by the authors I have referred to, and the repeated decisions made since his day.
From this view which has been taken of the subject it will be perceived that it is necessary that the indictment should conclude against the statutes in such case made and provided &c. for the first statute created the offence and the second has added to the punishment. (Starkie 256. Hawk, ch. 25. sect. 117. f
I come now to the last ground, which is urged asa ground of new trial, and I am free to confess that it is by ndj means clear of difficulty. Two objections to the claim of th^ prisoner have presented themselves. One arising from the! language of the act, and the other from the difference ancf degree of the punishment imposed by the last act. The firs| act of 1740, in which the clause is contained under which the prisoner claims the benefit of his oath, is in these words? “ If any slave shall suffer in life,' limb or member, or shall be maimed, beaten or abused contrary to the directions and true intent and meaning of this act.” Now it is said the negro, in the case before us, was not beaten contrary to that act but contrary to the act of 1821, and the privilege of his own oath is only given to one who violates that act. The answer to this is, that the act of 1740 is a system of law adapted to the policy of the country in relation to slaves, and therefore any partial alterations are not to be considered as meant to repeal those provisions which arise out of this state of things.
The clause is general in its operation, and must of course remain. How can you limit its operation without le *546 gislative provision. If it be said it may apply to the second charge in the indictment and not to the first, when a prisoner • is indicted under both clauses of the act (as he mustnecessa--rily be) we cannot ascertain the degree of guilt until the evidence is. heard. Therefore the evidence in defence must be heard to determine whether it is admissible. .
But the more serious objection is that in a case where a man’s life is at stake, the inducement to perjury is irresistible, and the'privilege destroys the act; although this may be frequently the effect, yet we are not at liberty to say that the legislature meant to take away this privilege, for its necessity or propriety originated in a state of things not materially changed since 1740. The slave and his owner or possessor is perhaps as much secluded from the views of other white persons now as formerly; he is still even now for clays and weeks, in many parts of the country, left entirely with the master or overseer, and if in this situation an accidental killing should happen, why not permit the person killing to prove ’how it happened? His being subjected to, a more severe penalty for a murder is no reason why he should not be permitted to shew that he was free from all guilt; and this is what ,the law intends. If the accused goes further he abuses the lav? and adds to his offences; and this is in fact the law wbére orie white man is killed by another out of the view of any person.. If he confess that he caused the death and state the ‘ circumstances and manner of killing, the whole confession is takeB, and if satisfactory, will induce an acquittal.
The particular ground of objection stated by the presiding judge cannot operate, because the mere presénce of a person at the moment of the death does not enable such person to ste te how it occurred. See the State vs. Taylor, 2 M’Cord’s Rep. 483.
Johnston & Gregg, for the motion.
Peareson, Sol. contra;